# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARIPOSA FARMS, LLC, a New Mexico
limited liability company,

        Plaintiff,

v.                                                            No. CIV-03-0779 JC/LAM

WESTFALIA-SURGE, INC., an Illinois
corporation, and ROTA-TECH DAIRY
SHEDS INTERNATIONAL, LTD., a
New Zealand company,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant Rota-Tech's Motion for Partial Summary Judgment*, filed October 1, 2004 (*Doc. 94*). The Court, having considered the Motion, the parties' submissions, and the relevant authority, denies the motion in part and grants it in part[1].

**I.**    **Background**

This case arises from alleged deficiencies in a milking system installed at a commercial dairy located in New Mexico. In January 2000, Plaintiff and Rota-Tech entered into a Construction Agreement, though the document was never signed by Plaintiff. Plaintiff alleges that Defendant Rota-Tech designed, manufactured, installed and serviced commercial dairy milking equipment as part of

---

[1] In a Pre-Trial Conference held on April 5, 2005, the Court made oral rulings on two of the three dispositive motions pending before it. The Court also instructed that written memoranda and orders would follow. To the extent that this Memorandum Opinion and Order diverges from any oral rulings, such oral rulings are vacated and superseded by this written Memorandum.

the system that failed to perform as intended resulting in financial loss.  Plaintiff brings claims sounding in both contract and tort.

**II.**     **Legal Standard**

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  For purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party.  *Id*.  The moving party has the initial burden of showing that there is no genuine issue of material fact.  *Id.* at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial.  *Anderson,* 477 U.S. at 248, 256.  To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims.  *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995).  Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.*  If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  *Matsushita*, 475 U.S. at 597.

**III.     Discussion**

Defendant Rota-Tech Dairy Sheds International Ltd. ("Rota-Tech") moves the Court for summary judgment disposition in its favor on Plaintiff's tort claims and further requests a ruling limiting Plaintiff's maximum recovery to the price of the milking platform as stated in the Construction Agreement ("Agreement") between Plaintiff and Rota-Tech.[2] In support of its Motion, Rota-Tech asserts, and Plaintiff denies, that Rota-Tech and Plaintiff are parties to a written contract for the sale of goods governed by New Mexico's Uniform Commercial Code ("UCC"). Next, Rota-Tech asserts the undisputed fact that the damages allegedly suffered by Plaintiff are comprised of purely economic losses. Thus, Rota-Tech urges, Plaintiff's claims sounding in negligence and strict products liability are barred by the economic loss rule, which prohibits recovery in tort for purely economic losses in commercial settings. Further, Rota-Tech argues, the Agreement expressly precludes any recovery for incidental and consequential damages through its Limitation of Liability Clauses and caps the available recovery at $212,053.00, the purchase price of the rotary platform Rota-Tech sold to Mariposa Farms.

Plaintiff responds that the economic loss rule does not apply, for in New Mexico its preclusive effect is limited to claims for injuries to the product itself absent special circumstances not present here. The property damages Plaintiff suffered are to its herd of milking cows, not the milking machinery that was the subject of the its contract with Rota-Tech. Plaintiff also asserts that its relationship to Rota-Tech exceeded the mere sale of goods and thus the transaction is not governed exclusively by the UCC. In this vein, Plaintiff contends that Rota-Tech was the "principal designer

---

[2] Rota-Tech also requested summary judgment in its favor on Plaintiff's claim for punitive damages. That issue was mooted, however, upon filing of the parties' *Stipulation for Dismissal of Punitive Damages Claim* on February 22, 2005 (*Doc. 195*).

of the platform, various components of the vacuum system, and the manner in which the equipment would integrate with Westfalia-Surge equipment." Resp. at 1-2. Finally, Plaintiff contends that the Limitation of Liability clauses in the contract relied upon by Rota-Tech to limit damages fail of their essential purpose and are unconscionable, for the defects in the equipment were latent and damages in excess of the contract price were already incurred by the time such defects were discovered. Plaintiff also challenges enforcement of the Limitation of Liability clauses arguing no mutual assent to those terms.

### A. *Economic Loss Rule*

It is well-settled in New Mexico that the economic loss rule precludes tort claims for "economic losses from injury of a product to itself." *In re Consolidated Vista Hills Retaining Wall Litig., Amrep. Southwest, Inc. v. Shollenbarger*, 119 N.M. 542 (1995) (quoting *Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 108 N.M. 539 (Ct. App. 1989)). Indeed, the New Mexico Court of Appeals held that in commercial transactions between parties with comparable bargaining power, damage to the product itself should be governed by contract law. *Caterpillar*, 108 N.M. at 542. The perplexing question here is whether the instant case presents the type of circumstances exhibited in *Spectron Dev. Lab. v. Am. Hollow Boring Co.*, 123 N.M. 170 (Ct. App. 1997) which would provide a rationale for applying the economic loss rule to the property damages allegedly suffered by Plaintiff. Rota-Tech asserts that the holding in *Spectron* is not limited to its unusual facts and is determinative. The Court, after much deliberation, disagrees with Rota-Tech's position on the state of the law and, for the reasons discussed briefly below, finds the underlying *Spectron* rationale lacking on the facts of this case.

Rota-Tech asserts that Plaintiff "seeks to turn *Spectron* on its head by arguing that tort

remedies are available for property damage in commercial transactions unless a plaintiff possesses extraordinary sophistication regarding the product." Reply at 10. Rota-Tech instead reads *Spectron* as creating the opposite presumption, that "for the courts to interfere with the statutory scheme by superimposing tort rules, there must be sound policy reasons for finding the statutory scheme to be inadequate." Reply at 10 (quoting *Spectron*, 123 N.M. at 176). While this is true, the policy reasons supporting strict products liability were also discussed by the *Spectron* court and, at least to some extent, recognized to bear even on the "special situation" before it. *Id.*

The *Spectron* court clearly stated that the "key feature" of the relationship between buyer and seller of the steel pump tube incorporated into a sophisticated light-gas gun in that case was that "[buyer] Titan was essentially the manufacturer of the [end product] light-gas gun, acting as the designer and general contractor who subcontracted out the production and assembly of component parts." *Id.* at 176. Moreover, the court noted that Titan was, in fact, the only company in the United States designing, manufacturing, and producing the highly sophisticated light-gas gun at that time, essentially characterizing Titan as the foremost authority on the end product itself. *Id.*

By contrast, the evidence before the Court indicates no similar, exclusive expertise on the part of Mariposa regarding the milking platform and system, notwithstanding Mr. Skelley functioning as general contractor for the start-up dairy project and his prior experience at another diary. Mr. Skelley stated that he had no knowledge, skill, or prior experience with Rota-Tech's Rotary Platform. Skelley Aff. at 2-3. Nor can Plaintiff be accurately described as the designer and manufacturer of the milking system, much less the only such manufacturer. Instead, Rota-Tech's Director, John Bowers, prepared all of the specifications for the milking system. Bowers Dep. at 15:9-12. Though Skelley undisputedly reviewed the specifications and had some input regarding modifications thereto, the

Court finds Skelley's posture *vis-a-vis* Rota-Tech to be distinguishably different than that of the *Spectron* buyer to its seller.

The Court recognizes that the *Spectron* holding was not based solely upon the buyer's exceptional and superior expertise, though reiterates that it was "key." The Court of Appeals cited the economic loss rule; considered the highly remarkable knowledge and expertise on the part of the buyer; analyzed the four primary policy factors supporting strict liability; found that the UCC provided adequate response to those factors insofar as they applied to the "special situation" before it, and concluded that contract remedies alone were adequate on the facts of that case. *Spectron,* 123 N.M. at 175-177. In reaching its determination, the *Spectron* court quoted from *Kaiser Steel Corp. v. Westinghouse Elec. Corp.*, 127 Cal. Rptr. 838, 845, but ultimately declined to decide "precisely when the UCC is the exclusive source of remedies for property damage..." and limited its reliance on the *Kaiser* rule to reinforcing "the result we reach *today.*" *Id.* at 177 (emphasis added).

The Court is mindful of the Michigan Supreme Court's ruling in the consolidated cases styled *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W. 2d 612 (Mich. 1992), which cases present facts remarkably similar to those at hand. As Rota-Tech reminds the Court, however, "the Court's primary concern in this diversity case [is] to apply New Mexico law as New Mexico would apply it." Reply at 16. In that very quest, the Court determines that even if the *Spectron* decision extended the doctrine of economic loss to other property damage as a presumption that may be rebutted by other policy considerations, it is simply not convinced that New Mexico courts would apply the limitation on the facts of this case. It bears repeating that the policies supporting strict products liability were determined to be adequately "addressed" by the UCC only in *Spectron's* "special situation." *Id.* At 176.

That said, it is with some consternation that the Court declines to endorse Rota-Tech's more broad reading of the economic loss rule to preclude Plaintiff's strict liability and negligence claims under *Spectron*. However, the Court finds no unique circumstances present under which the UCC remedies adequately address the policies supporting strict liability here as they did in *Spectron*. Thus, the economic loss rule should not bar Plaintiff's tort law claims.

### B.     Sale of Goods

Given a mixed contract including sale of goods and services, the "primary purpose" test must be applied to determine whether the contract is governed by the UCC. Thus, the question is whether the Agreement was primarily for the sale of the equipment, involving incidental services such as installation and maintenance, or primarily for the rendition of those services, with the transfer of the equipment incidental to that purpose. *See Kirkpatrick v. Introspect Healthcare Corp.*, 114 N.M. 706, 709-710 (1992) (applying test established in *Bonebreak v. Cox*, 499 F.2d 951 (8th Cir. 1974). On the record before it, the Court determines as a matter of law that the Agreement's primary purpose was the sale of the goods, chiefly the milking carousel; the design, installation and service related thereto were secondary to that purpose. Thus, to the extent that the Agreement was in force, it is governed by the UCC.

### C.     Limitation Clauses

Rota-Tech seeks summary judgment determination that the Limitation of Liability clauses in the Construction Agreement are valid and enforceable as a matter of law. Plaintiff responds that the Limitation clauses are either unconscionable or fail in their essential purpose and, as such, are invalid. Plaintiff further argues that it never signed the Agreement and, despite testifying to its belief that it indeed had an agreement with Rota-Tech for design, construction, and installation of the platform,

7

it never manifested assent to the terms of the Limited Liability clauses.

*Lack of Signature by Plaintiff*

First, the Court will discuss due execution of the Agreement. Plaintiff never signed the Agreement, but through Skelley's testimony it has acknowledged its belief that it had *an* agreement with Rota-Tech for the design, construction, and installation of the rotary platform. Skelley Dep. at 170:17. Plaintiff also asserts, however, notwithstanding its acknowledgment through its 30(b)(c) witness Skelley that *an* agreement existed, it did not assent to the Limited Liability terms of the Agreement Defendants seek to enforce against it. Further, Plaintiff argues, Rota-Tech did not itself sign the Agreement until January 2000 but had begun design of the parlor in July 1999. Because the design portion of the relationship preceded the Construction Agreement by five months, Plaintiff argues, it cannot be said that the design features were performed under the written Agreement limiting liability or that the Agreement embodied the complete relationship between the parties.

Rota-Tech contends that whether the contract was duly executed despite the lack of signature by Marisposa is a question of law for the Court to determine on summary judgment. On this point, Rota-Tech references NMSA 1978 § 55-2-201(3)(b) providing that execution is unnecessary to satisfy the UCC statute of frauds when a party admits the existence of the contract in pleadings and testimony. Resp. at 6, n.2. The Court finds, nonetheless, lingering questions of material fact making summary judgment disposition improper, for the real dispute is regarding the terms of the agreement and mutual assent thereto. Plaintiff contends that it had *an* agreement but denies that the Agreement before the Court embodies it. Absent a determination of mutual assent, a question of fact, the Court cannot rule that the Agreement was duly executed as a matter of law. Therefore, summary judgment on this issue is denied.

*Essential Purpose/Unconscionability*

If the evidence at trial establishes that there was due execution of the Agreement, Plaintiff's challenges to enforceability of the Limitation clauses on other grounds remain in need of resolution. Rota-Tech, never Plaintiff, identifies for the Court the three different clauses in question and provides the proper standard for analyzing the challenges to each. The clauses at issue are (1) a clause excluding all consequential damages; (2) a clause excluding consequential damages related to death or injury to Plaintiff's animals; and (3) a clause limiting Rota-Tech's maximum liability to Plaintiff to an amount no greater than the purchase price of the Rotary Platform. Reply at 16 (citing Agreement ¶¶ 7.1, 7.1(c), 7.2). The first two clauses exclude consequential damages while the third is a limited remedy provision. Section 55-2-302 of the New Mexico UCC makes all contract clauses subject to unconscionability analysis while Section 55-2-719 provides that limited remedies are unenforceable if they fail of their essential purpose.

Whether the limitation of remedies clause fails of its essential purpose involves questions of fact. Plaintiff urges that it fails in purpose because the alleged defects in the equipment were latent and went undiscovered until significant damage was done. The question whether latent defects existed is clearly one of material fact. Plaintiff further asserts that enforcement of the limited remedy provision would deprive it of the substantial benefit of its bargain. Defendant argues that the latent defect theory upon which Plaintiff so heavily relies is, without more, insufficient to defeat a motion for summary judgment. The Court finds, however, that factual development at trial is necessary on this issue as well. Thus, summary judgment disposition is improper.

Similarly, whether any of the three clauses are unenforceable against Plaintiff as unconscionable requires factual development at trial. Indeed, Rota-Tech correctly identifies that

9

under the UCC, unconscionability is an "absence of meaningful choice" for one party combined with "contract terms which are unreasonably favorable to the other party." *See Bowlin's, Inc. v. Ramsey Oil Co., Inc.*, 99 N.M. 660, 668 (Ct. App. 1983) (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). Rota-Tech then swiftly asserts that the Court should determine the unconscionability questions as a matter of law at this summary judgment phase. The Court finds that factual development is necessary, however, before a reasoned and informed determination can be made on this issue. Thus, summary judgment on this issue of unconscionability will be denied.

### IV.    Conclusion

In summary, the Court determines as a matter of law that the economic loss rule should not preclude Plaintiff from seeking recovery in both contract and tort on the facts of this case. The Court further finds the record before it sufficient for the Court to determine, as a matter of law, that the primary purpose of the Agreement was the sale of goods and as such it is governed by the UCC. The Court denies summary judgment on the issues of due execution and enforceablity of the Limitation of Remedies clauses against Plaintiff, finding genuine issues of material fact in need of resolution at trial.

WHEREFORE,

**IT IS ORDERED** that *Defendant Rota-Tech's Motion for Partial Summary Judgment*, filed October 1, 2004 (*Doc. 94*) is GRANTED IN PART and DENIED IN PART as follows:

   I.    **The economic loss rule does not preclude Plaintiff's tort claims;**

   II.   **The written Agreement is governed by the UCC;**
         **and**

**III.    Due execution of the Agreement, and enforceability of the Limitation of Remedies clauses against Plaintiff involve questions of fact in need of resolution at trial.**

DATED April 7, 2005.

_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    David A. Domina, Esq.
    James F. Cann, Esq.
    Domina Law, P.C.
    Omaha, NE

    Esteban A. Aguilar, Esq.
    Felicia C. Weingartner, Esq.
    Aguilar Law Offices, P.C.
    Albuquerque, New Mexico

Counsel for Defendant Westfalia-Surge, Inc.:

    M. Eliza Stewart, Esq.
    Madison, Harbour, Mroz & Brennan, P.A.
    Albuquerque, New Mexico

    Brice A. Tondre, Esq.
    Denver, Colorado

Counsel for Defendant Rota-Tech Dairy Sheds International, Ltd.

    Patrick M. Shay, Esq.
    Kurt B. Gilbert, Esq.
    Rodey, Dickason, Sloan, Akin & Robb, P.A.